*273 Opinion of the Court,
by Judge Mills.
A writing, purporting to be the-will of George Wells, was produced in the county court of Shelby, where the testator last resided, and offered for probat by the executors therein named, at the March court, 1817. The court proceeded to hear the testimony of the subscribing witnesses, and decided the proof insufficient, and refused to record the will. The legatees, as the record states, at the same court, made a motion to reconsider the decision, and this motion was overruled.
There is no limitation as to the time a will shall be proved.
The decision ■of a county ■court on the validity of a will, is a bar ■to any subsequent proceedings thereon before that court; the remedy is by ■appeal or writ of error.
•At 'the succeeding July court in the same year, the same writing was produced and offered to the same court for probat, the record does not state by whom; but it proceeds to relate, that “some of the heirs” of the deceased appeared and contested the probat, and relied upon the decision of the court at the former ■term as conclusive. The court decided that the former judgment was a bar. The record then proceeds to state that “the heirs of George Wells, who are named in the writing,” prayed an appeal, which was granted, but never prosecuted.
At the October term of the same court, in the year 1899, Peyton Wells, then an infant, and one of the devisees or legatees named in said writing, appeared in the court, and moved for a summons to issue for the subscribing' witnesses, and to institute new proceedings to admit the same writing to record, as the will of the decedent. The heirs of the decedent then appeared forthwith, and opposed this application, relying on the ground that the first adjudication was a bar to these proceedings. This ground the court again sustained, and overruled the application. To reverse this last decision, the said Peyton Wells has prosecuted this writ of error. In this court he has produced proof sufficient to establish the will, according to former decisions. The defendants in error have produced and relied upon the former decisions of the same county court, which are still in force and unreversed, as conclusive against the writ of error. To avoid the effect of this, the plaintiff in error has proved that he was an infant when the former proceedings were had. He insists on the following grounds, to avoid this defence:
1st. That the proceedings first had, can. be no bar in law, and that the same court is at liberty to entertain jurisdiction again and again for the purpose of recording a will which they have once rejected.
9nd. That if the law be otherwise, it does not appear that the present plaintiff in error was expressly a party to any of the former proceedings; that he was a party, must be shown by his adversaries, and they having failed in this, he cannot be barred.
3rd. That he was at the date of the former proceedings, and still is, an infant, and has his day in court, until after he arrives at age, and that if the law be against him in other respects, this will entitle him to proceed *275 now to establish the will. These are the questions presented for our decision. ’
The statutory proof of wills in this State and that of Virginia, no doubt, took its. rise from the probat in Great Britain, but has so far been altered that the analogy is measurably destroyed; and from the alterations made, many important consequences follow, in settling which, we can derive but little aid from ancient precedents. ^.nd it is somewhat singular, that the present mode sh|6\á;ld have been so long in force, and that thesequestionsJÉhould never have presented themselves to* any couifpf the last resort. In our researches on this subject, we have not been able to find any adjudged* case among the reports of both the States.
In Great Britain, the ecclesiastical courts alone had the proof of wills. Those courts were courts existing not only by the authority of the church, but also derived their power from the civil government. Hence, their decisions were always held valid and binding in all the courts of the realm. In this country, the county courts are substituted for the ecclesiastical courts, in this particular; and as they are courts of record, and as the* jurisdiction formerly held by the ecclesiastical courts, on this subject, is transferred to them, their decisions-must be equally, if not more, binding.
In Great Britain, the courts of probat had no authority to take the proof of wills, for any other purpose than that touching personal estate. As to lands, they had no jurisdiction. ■ Hence, where the personalty alone was in issue in the courts of record, the probat of the will was held binding, and could not be contested cob laterally. But where lands devised were- contested, the probat amounted to nothing. The- devisee produced the will, and in such controversies, had to prove it, as another paper, as well as the capacity of the testator to devise, on every trial. The executor wtts the proper representative of the personal estate and legatees, and took the residuum not disposed of. Hence, the executor there was the proper party to produce and prove the will.
In this country, the power of probat is extended beyond the personalty, to the lands also. Hence, the pro-bat, properly certified, has always been held sufficient to admit the will as evidence, in every controversy, without other proof. As the probat here, reaches -es *276 tate real and personal, both, it would seem to follow, that either the executor or devisee, or both, were proper parties to present and record the will; and that a decision rendered by the proper court, on the application of either, ought to be valid as to both, or all concerned; for, as the proof by one would result to the benefit of the other, the latter ought consequently to be bound by it.
As the will proved is valid as to both the realty and personalty, it is presumed, that, on the exhibition of it in evidence, properly proved by the prope&ieourt, it would be incompetent for a stranger, or inde|P'the heir at law, to contest the will, to require the proof of its execution over again collaterally, and to question the sanity of the testator, on every trial. No case is found where such liberty was granted or taken in England, where the personalty was in contest and the will had been proved before the proper court.
Here, then1, are two cases where the general analogy of the law is dissented from, and the case of decision by courts of probaf on wills, is made to operate upon, and even conclude those who were not express parties to the probat. The heir and devisee, and all concerned, may be bound, where the executor alone has proved the will, and they cannot contest it, until the probat is set aside by proper authority. In collateral contests, this question, devisavit vel non, is laid asleep. This goes far to show that one decision on the probat may be a bar to another, before the same court.
In Great Britain, the will might be proved ex parte, but such proceeding might be again questioned before the same court; or the distributees and legatees might be summoned, and then the decision had still greater validity; but, in either case, we have found no instance where the probat, whether ex parte or not, could be contested in any way but direct proceedings in the same court. The first provision which existed in Virginia, and which we have examined, passed in 1748.—-The will was to be proved at once, ex parte. See Vir. 'Body of Laws, 167. Nor is there any provision for contesting it afterwards, as to those interested in the personalty. As to the heir at law, if the lands were devised away, this kind of probat was not obligatory as to him, until he was summoned, or proclamation made, if the heir or heirs were unknown. The proof then *277 '•taken, was, no doubt, intended to be obligatory, except as to infants, persons non compos, and some others excepted, who were allowed ten years after their disabilities were removed, and then they must contest it in the same court. This mode was ultimately changed for the present provisions of our own act, which declares, that “when any will shall be exhibited to be proved, the court having jurisdiction as aforesaid, may proceed immediately to receive the proof thereof, and grant the certificate of such probat. If, however, any person interested shall, within seven years afterwards, appear, and by his bill in chancery contest the validity of the will, an issue shall be made up, whether the writing produced be the will of the testator or not, which shall be tried by a jury, whose verdict shall be final between the parties, saving to the court the power of granting a new trial, for good cause shown, as in other trials; but no such party appearing within that time, the probat shall be forever binding-, saving, also, to infants, femes covert and persons absent from the State or non compos mentis, the like period after the removal of their respective disabilities.”
This act changes the ancient provision, and renders a summons to the heirs unnecessary, and not essential to the validity of the will; and, instead of a contest in the same court, it substitues the proceedings in a court of equity, which alone can reverse the former decision. There can be no doubt, under this act, as to what is the effect of the decision, if in favor of the will. It is like a judgment in rem, and shall be binding forever; and the only inquiry then is, what is the effect of it, if against the will ?
In pursuing this history of the probat, whether we consider it in the ecclesiastical courts, receiving the prbbat as to the personalty only, after the distributees were summoned, or in Virginia, where the courts had power to take the proof as to personalty, without summons, and as to the realty, with it; or, under the latter act, with power to take the proof, both as to personalty and realty, without summons, reserving a right to contest that mode in a particular way only, we view the whole as modes of virtually trying the issue devisavit vel non, and that the finding of the issue in favor of the will, is conclusive on that issue, until it is corrected in the proper mode; and if this trial might be had ex *278 parle, and still be binding, it is an exception to the getferal rule, created by legislative provisions.
If the issue is conclusive when determined in favor of the will, it would seem to follow, from analogy to other cases, it must be taken as equally conclusive, if against it; and no good reason can be assigned, why the decision should possess no validity, unless it is on one side of the question. If on the other, it must stand for nothing. On the contrary, we take such decision as proving that there is no will, until it is reversed; and such seems to be the understanding of the legislature upon the subject. The decedent, in such case, must be held, in law, as having died intestate.
The same act provides, that ££ during any contest about a will, or in the absence of executors, or whenever the court, from any other cause, shall judge it convenient, they may appoint any person or persons to collect and preserve the estate of any decedent, until a probat of his-will, or administration of his estate be granted, taking bond and security for collecting the estate, and making an inventory thereof, and safe-keeping and delivering up-the same, when required, to the executors or administrators,”
Now, this section supposes that the fact of will or no will, may be uncertain during the contest, and that its-termination will disclose whether there be a will or not;' that if the will is successful, the temporary duties of the curators must cease, and the executor succeeds. If the will is defeated, administration may be granted, as in the case of intestacy, and the administrator takes-the goods. But if the decision against the will determines nothing, how can there be an administrator, or the curator’s office ever terminate? No person knowing of the paper, can make oath that there is no will, to-the best of his knowledge or belief; and without such oath, administration cannot be granted. Presenting the old paper, must forever keep the cux-ators in office j for the decision against it proves nothing. Nay, the saxne court who decided against the will, could never grant administration. They can only grant where there is no will, or after the will is proved; but knowing of the paper claiming to be a will, and that their own decision thereon proved nothing, and left it wholly uncertain whether it was a will or not, they could not proceed to administration. Such provisions show that *279 the 'legislature intended that a decision against a will should conclusively prove there was none, until it is reversed.
Many evil consequences must grow from a different decision, a few of which will be noticed. The same court may be perpetually harrassed with the same controversy, at every term, and can never end it. Their decision once given, proves nothing, and they can never get clear of it, but by deciding in favor of the will.— There is no limitation as to time, on the proof of wills, and possible cases may arise, where, after thirty years, nay, half a century, and after the death or removal of all who could prove the forgery or the insanity of the decedent, a will might succeed, and cause estates to change ownership, and thereby produce great evils in society. A devisee might again and again renew his suit against the heir at law, for the estate, and produce and attempt to prove his will on the trial, until, by subornation or other, unfair ‘ means, he might perchance succeed ; and the heir at law could never quiet his Claim, or conclude the contest, by producing the decision of a competent tribunal against the will.
The power of an executor exists before the will is proved, and if it is decided against it, he may still continue to sue for, and claim the estate, and the production of the same decision could never prove that he was no executor. As almost every estate must, at some time or other, and in many cases, pass many times by descent or devise, in the course of one generation, it is absolutely necessary for the security of society, that decisions, not only for, but against wills, by the proper tribunals authorized to take the probat, should be held conclusive, until avoided in the mode pointed out by law.
The great argument against this is, that as this plaintiff was no party, his rights could not be affected, and •that the rule of law on that subject is too imperative to be avoided. We admit that the rule is inflexible, and almost universal; but it either does not embrace this case, or the case is an exception, like proceedings in rem. The production of the will with the probat attached, we have seen, is conclusive against even strangers, that there is such will. So, a record of a judgment between other parties, is conclusive that there is such record, even against strangers, whenever it can be *280 used. At tiie death of a man, his hands are taken from his estate; his title ceases. The estate may be said to-belong to the world, until the decision of a court gives it to his administrator, or decides that he has disposed of it in his lifetime. This disposition, and the decision, of a court that there is such disposition, conclude the claims of no other persons but those claiming under the testator or intestate; and, as to them, there is an evident necessity that such decision should take place, to which not only those who are named on the record, but the world, shall be held as parties, and as concluded.
It is contended that this rule will be attended with hardships; that, if the will is successful, the party defeated has still the right of a new contest in a court of equity, but if the will fails, no such appeal lies. To this it may be replied, that an appeal or writ of error lies to this court, and an infant could still apply here, at any time before three years had expired after he had' arrived at mature age; and this will, be found sufficient to obviate most cases of hardship. If any, however, shall still fall a sacrifice, better so, than that the community should be subjected to greater evils.
Upon the whole case, therefore, we conclude that the former and first decision of the county court was a bar to the renewal of the controversy there, and that the court, on that point, decided correctly. We shall only add, that if the decision of the court below proves nothing against the will, it will be hard to perceive the principle on which a writ of error to reverse could be maintained in this court. The same court, if such, be the law, ought to proceed again; and as the decision there does nothing, and settles no right, we ought not to review it, as the party, in that event, is not prejudiced.
The judgment must, therefore, be affirmed, with costs.