Taylor, &c. *vs.* Tibbatts, &c.

APPEAL FROM CAMPBELL COUNTY COURT.

WILL CASE.

13bm177
f104 687

13bm177
f124 87

Case 9.

Chief Justice SIMPSON delivered the opinion of the court.

June 15.

1. Where a will is established by the decision of the circuit court, and ordered to record, and recorded—that decision appealed from and affirmed by the court of appeals, it is not necessary again to record the will.

2. A writ of error, with supersedeas, to the order of a circuit court ordering the entry of a mandate of the court of appeals, does not suspend the judgment of the circuit court, which the mandate shows to have been affirmed.

3. In Kentucky, the jurisdiction of the proof of wills, whether of real or personal estate, or both, belongs to the county courts, and the manner of proof is prescribed by statute, subject, however, to be contested by bill in chancery in the circuit court. The law makes no provision for a re-trial in the same court. A county court, at a subsequent term, has no power to set aside a probate of a will made at a previous term. (5 *Littell,* 473.)

4. An executor who has renounced may retract his renunciation before administration *cum testamento annexo* is granted. (1 *Williams on Ex'ors,* 155; 3 *Hagg.* 212; 4 *Leigh,* 152.)

5. If there be a will and an executor, and administration be granted before probate and refusal, it is void upon the will being afterwards proved, though the will were suppressed at the time of administration granted—(*Toller,* 120;) and the acts of an administrator before probate will be valid so far as they concern strangers—(2 *Nott & McChord,* 577.)

6. When one named executor qualifies as administrator, he may, upon proof of the will, qualify as executor—the act of qualifying as administrator was no renunciation of his right to qualify as executor—(*Williams on Ex'ors.* 148.)

7. An administrator or executor, for certain causes, may be removed by the county court, but that court has no power to *set aside the order* of their qualification at a term subsequent to that at which it is made.

At the November term 1848, of the Campbell county court, the last will and testament of Gen. James Taylor, deceased, was offered for probate, and rejected by the court.

Case stated.

The testator, in his will, appointed his son James Taylor his executor, to whom, at the same term, the court granted letters of administration on his father's estate, after it had decided against the validity of the will.

TAYLOR, &c.
vs.
TIBBATTS, &c.

Some of the parties interested in the establishment of the will being dissatisfied with the decision of the county court, the case was taken by them to the Campbell circuit court, on two separate writs of error, where, after a full hearing, a decision was rendered sustaining the will, reversing the order and judgment of the county court rejecting it, and ordering it to be recorded in both courts as the true last will and testament of James Taylor, deceased.

The controversy was brought to this court, by an appeal taken in each case, the proceedings on the two writs of error having been carried on separately in the circuit court, and a judgment given in each case establishing the will. The decision of the circuit court was approved of and affirmed by this court. (10 B. Monroe, 473.) And the court, in the mandate of affirmance, in order to avoid unnecessary costs, directed that the will be recorded in the circuit court but once, and that there be but one mandate to the county court.

At the October term 1850, of the Campbell circuit court, the mandate of this court was filed and an order in conformity therewith entered of record, from which proceeding an appeal was prayed by Tibbatts and Williamson, and refused by the court. They, however, afterwards sued out a writ of error, with supersedeas, from the clerk's office of this court, to the action of the circuit court in entering said mandate, which was heard at the December term 1850, of this court, and the proceedings in the circuit court affirmed.

At the January term 1851, of the Campbell county court, an order was made establishing the will of James Taylor, deceased, and directing the same to be recorded, in pursuance of the mandate and orders of the Campbell circuit court, which were then produced to the county court; and James Taylor, the person named by the testator, qualified as the executor of his will.

At a subsequent term of said county court, a motion was made by Tibbatts and others to set aside the order establishing the will and ordering it to be recorded, and also to revoke the letters testamentary granted to the executor.

The motion was heard at the September term 1851, and sustained by the court; and the order establishing the will and admitting it to record, and permitting James Taylor to qualify as executor, was set aside, and the letters of probate granted to the executor were revoked and annulled. From that decision an appeal was prayed to this court.

*The decision of the county court now to be considered, and the objections thereto.*

The validity of the order of the Campbell county court, made at its January term 1851, establishing the will and directing it to be recorded, is objected to on two grounds. First: No record of it had been made in the circuit court after the case had been decided in this court and its mandate filed in the circuit court. Second: The order of the circuit court permitting the mandate of this court to be filed, and all the proceedings then had, were afterwards superseded, and although the writ of error and supersedeas had been disposed of, and the case affirmed in this court, yet the mandate in the last mentioned case had only been lodged in the clerk's office of the circuit court, but had never been filed in open court.

As it respects the first objection, it appears that the will was recorded in the circuit court, at the same term the trial was had on the writs of error prosecuted to reverse the order of the county court, after the will was sustained by said court, and before the appeal had been prayed. The proceedings in the circuit court were affirmed, and, consequently, no further action on the part of the circuit court was required, except to enter the mandate of affirmance, and carry it into effect. It was not necessary, in doing this, to record the will over again. The direction contained in the mandate actually prohibited it to be done. The record showed that the will had been once recorded, and there having been two separate writs

*1. Where a will is established by the decision of the circuit court, and ordered to record, and recorded; that decision appealed from and affirmed by the court of appeals, it is not necessary again to record the will.*

TAYLOR, &c.
*vs.*
TIBBATTS, &c.

2. A writ of error, with supersedeas, to the order of a circuit court ordering the entry of a mandate of the court of appeals, does not suspend the judgment of the circuit court, which the mandate shows to have been affirmed.

of error prosecuted in the circuit court, this court, on that account, deemed it proper to suggest, that it was necessary to record it but once, and framed its mandate accordingly. It would, therefore, have been improper, and inconsistent with the mandate of this court, for the circuit court to have ordered the will to be recorded the second time.

The second objection assumes, that the judgment of the circuit court which had been affirmed by this court, was suspended by the writ of error, with supersedeas, prosecuted to reverse the order of the circuit court, permitting the mandate of affirmance to be entered of record, and giving directions for its execution. This proposition cannot be maintained. The judgment of the circuit court had been affirmed, and the mandate of this court to that effect entered of record. That judgment could not have been disturbed by the writ of error; it was final and irreversible. The writ of error, if maintainable at all, could alone have been prosecuted to revise the action of the circuit court, if any was had, in directing the execution of the mandate of this court. The circuit court, however, was not required to do any act in addition to what had been done by it in the first instance—all of which had been affirmed by this court—but it was directed to record the will but once, and to issue but one mandate to the county court. The duty imposed by this requisition was of a negative character, and even had it not been strictly complied with, still the judgment of the circuit court, establishing the will, and ordering it to be recorded in the county court, having been affirmed by this court, and the mandate of affirmance entered of record, its legal effect was not impaired or suspended by the prosecution of the writ of error, which could only, in any state of case, have been maintained to revise the proceedings had in the circuit court, supplementary to those which had being previously revised and affirmed.

But if it were otherwise, and both or either of the objections to the proceedings of the county court at

Its January term 1851, were valid, still the very important question would occur, had the county court any power or jurisdiction, at a subsequent term, to revise its own proceedings, and annul the order made establishing the will and directing it to be recorded.

The law in this state upon the subject of the probate of wills, is essentially different from the English law upon the same subject. There the jurisdiction belongs to the ecclesiastical courts, and is confined to testaments of personal estate. The common mode of proving a will is summary and *ex parte*. But such a probate *is not final and conclusive; it is liable to be* revoked on citation by the tribunal that granted it. (*Toller*, 56, 57 ; *Williams on Executors*, 193, 358.) Still, however, a probate in the more formal mode, after a sufficient citation, cannot be revoked by the court which granted it, but may be reversed by appeal, and in no other way, unless the will had been fraudulently proved, or had been revoked ; in either of which cases the original court itself had power to vacate the probate. (*Toller*, 74–76 ; *Williams on Executors*, 359.) Here the probate extends to and embraces all last wills and testaments, both of real and personal estate. The jurisdiction belongs to the county courts. The manner of probate is prescribed by statute.— The act upon the subject provides, that "when any will shall be exhibited to be proved, the court having jurisdiction as aforesaid, may proceed immediately to receive the proof thereof, and grant a certificate of such probate ; if, however, any person interested shall, within seven years afterwards, appear, and by his bill in chancery contest the validity of the will, an issue shall be made up, whether the writing produced be the will of the testator or not, which shall be tried by a jury, whose verdict shall be final between the parties, saving to the court a power of granting a new trial for good cause, as in other trials ; but no such party appearing within that time, the probate shall be forever binding." (2 *Stat. Law*, 1543.) The law makes no provision for a re-trial in the same

3. In Kentucky, the jurisdiction of the proof of wills, whether of real or personal estate, or both, belongs to the county courts, and the manner of proof is prescribed by statute, subject however to be contested by bill in chancery in the circuit court. The law makes no provision for a re-trial in the same court. A county court, at a subsequent term, has no power to set aside a probate of a will made at a previous term. (5 *Littell*, 473.)

court; but, instead of permitting that to be done, substitutes a proceeding in a court of equity by which the validity of the will may be contested. The decision of the court of probate may also be revised in a superior tribunal, but the same court has no power at a subsequent term to set aside or vacate an order establishing a will and directing it to be recorded. A decision of the county court upon the validity of a will, is a bar to a renewal of the controversy in that court upon the same subject matter. (*Wells' Will*, 5 *Litt.* 273.) Consequently, the whole proceeding in the county court, so far as its object was to annul or vacate the order of that court, made at a previous term in pursuance of the mandate of the circuit court establishing the will, and requiring it to be recorded, was unauthorized, and is erroneous.

The power of the court to revoke the letters testamentary granted to the executor is a different question, the decision of which does not directly affect the validity of the will, but only incidentally, and that merely to the extent of the interest of the executor himself, and such of the devisees as might derive some advantage from those peculiar powers, if any there be, contained in the will, which can be executed alone by the executor, and not by an administrator with the will annexed.

Our first inquiry however will be, whether any such cause as is assumed existed, for the revocation of the letters testamentary to James Taylor as executor, and in the next place to consider the question involving the power and jurisdiction of the county court to annul the order which had been made permitting the executor to qualify, and to revoke the letters of probate.

A renunciation of the executorship by James Taylor was the ground assumed by the county court for repealing the letters testamentary. To establish such a renunciation various matters are relied upon.

1. That at the November term 1848, of the county court, the will was presented to the court for probate

and was read in open court; after the reading of which, and before the decision of the court as to its validity, the executor stated to the court that he considered the will impracticable; did not think that it could be executed; and if it were possible for the court to admit it to record, he would not take upon himself the burthen of its execution.

2. That after the court rejected the will he was appointed the administrator of his father's estate, and in that capacity performed various and numerous acts in the receipt of money and payments of taxes and debts.

3. That deeds were also afterwards executed between the heirs, including the executor, disposing of the estate of their ancestor, as if he had died intestate.

4. That the said James Taylor acted under a power of attorney executed to him by his sisters and their husbands, and sold lands, executed conveyances, and collected rents, and paid the same over to the heirs, disregarding the provisions of the will.

These acts all occurred after the will had been rejected by the county court, except the declaration made by the executor in open court, when the question of the validity of the will was under consideration. If, therefore, it were conceded, that a valid renunciation by an executor might be made by acts *en pais*, it would not follow that it could be implied from acts, such as these, done after the court having jurisdiction over the subject matter had decided there was no will, and consequently no executorship to renounce. The law will not raise an implication repugnant to the evident intention and understanding of the party at the time the acts were performed by him.

Did the declaration made in open court by the executor amount to a renunciation? It evidently was not a direct peremptory renunciation. The executor stated, not that he did then refuse to undertake the execution of the will, but that he would do so in a

4. An executor who has renounced may retract his renunciation before administration *cum testamento annexo* is

TAYLOR, &c.
vs.
TIBBATTS, &c.

granted. (1 Williams on Ex'ors, 155; 3 Hagg. 212; 4 Leigh, 152.)

certain event. Until he made the renunciation, he had the right to change his purpose, notwithstanding the statement made by him of what he intended to do. Besides, the statement was made with a view to induce the court to reject the will, in pursuance of an agreement to that effect, which had been previously entered into between the executor and his sisters and their husbands, and not with a design to renounce the executorship if the will were established. We are, therefore, inclined to the opinion, that the declaration made by the executor, considering the terms in which it was made, the circumstances that induced it, and the object it was intended to accomplish, did not amount to a renunciation. But we do not deem it necessary to give a positive opinion on this point, because we are satisfied that if it amounted to a renunciation at all, it was such a one as the executor had a right to retract, under the circumstances in this case, and assume the executorship, at the time he qualified and obtained letters testamentary from the county court.

The doctrine is well established, that an executor who has renounced, may retract his renunciation before administration *cum testamento annexo* is granted. (1 *Williams on Executors*, 155; *McDonnell* v. *Pendergrast*, 3 *Hagg.* 212; *Thornton* v. *Winston*, 4 *Leigh*, 152.)

5. If there be a will and an executor, and administration be granted before probate and refusal, it is void upon the will being afterwards proved, though the will were suppressed at the time of administration granted—(*Toller*, 120;) and the acts of an administrator be-

If there be a will and an executor, and administration be granted before probate and refusal, it shall be void on the will's being afterwards proved, although the will were suppressed at the time of granting the administration. (*Toller*, 120.) But the acts of such an administrator, before probate of the will, may be valid, so far as the rights of strangers are affected by them. (*Benson's administrators* v. *Rice*, &c. 2 *Nott and McChord*, 577.)

The grant of administration to Taylor, the will having been subsequently established, became a perfect nullity. It was not a grant of administration with the will annexed, because the will had been re-

TAYLOR, &c.
*vs.*
TIBBATTS, &c.

jected by the probate court, and the grant of administration was made irrespective of the will. Whether under our statute the court could have appointed an administrator, *pendente lite*, it is unnecessary to decide. The grant that was made did not purport to be a grant merely of special or limited administration, but conferred general and unrestricted powers on the administrator. But if it had been a *pendente lite* administration merely, it would have been determined by its very nature and object when the will was established, and due probate thereof made, and would have presented no obstacle to the retraction of the executor, and the assumption by him of the duties of the executorship.

fore probate will be valid so far as they concern strangers— (2 *Nott & McChord,* 577.)

An executor who had made a voluntary renunciation was not permitted to retract his renunciation, after administration *cum testamento annexo* was granted to another person, because, originally, at common law, the executor had a right to the *residuum,* unless that right was expressly or impliedly excluded by the will, which right he surrendered by his renunciation, and it passed by the grant of administration, to the administrator *cum testamento annexo,* and having passed could not be arbitrarily reclaimed. The rule having been thus established, continued in existence after the reason for its adoption had ceased. But it is apparent, that the rule never could have had any application in a case like the present. Any right that passed by the grant of administration, was conferred upon the same person that was entitled to it as executor. The resumption of the office of executor, did not violate, or conflict with, any of the rights created by the grant of administration. The agreement that induced the declaration, which is supposed to have been a renunciation, provided for the grant of administration to the executor, so that it clearly appears the renunciation, if it were one, was not intended to have the effect of conferring any right upon another person as administrator.

6. When one named executor qualifies as administrator, he may, upon proof of the will, qualify as executor; the act of qualifying as administrator was no renunciation of his right to qualify as executor—(*Williams on Ex'ors.* 148.)

TAYLOR, &c.
vs.
TIBBATTS, &c.

The acts which were performed by the executor in the management of the estate, and that are relied upon to prove a renunciation by him *en pais*, would, had the will not have been rejected, have determined his election to accept the executorship; for if he once administer, it is considered that he has already accepted of the executorship. (*Williams on Executors,* 148.)

His appointment as administrator, and his acceptance of the office, after the rejection of the will, was not an implied renunciation, as at that time there was no office of executor to renounce. His acts in that character, for the same reason, and also because they were consistent with his duties as executor, and amounted in law, had the will not have been rejected, to an election of the executorship, could not authorize an implication that he had refused to act as executor. Nor does the grant of administration *to him,* preclude his right to retract a renunciation, if one had been made by him, because, it was not a grant of administration *cum testamento annexo,* nor a grant of administration to a third person, but was made upon the hypothesis that there was no will, and became void and inoperative when that hypothesis was overthrown: and having been made to the executor himself, left him in a condition to retract and assume the executorship without interfering with the rights or claims of third persons. The order of the county court, therefore, permitting the executor to qualify, and granting him letters testamentary, should not have been annulled, even if the county court had been invested with authority and jurisdiction at a subsequent term to have made such an order.

But the county courts have no power at a subsequent term to revise the final orders made by them at a previous term, for error in the proceedings of the court. Even in the case of an administration, which has been regularly granted, they have no power to set aside the order appointing the administrator, although as he derives his authority exclusively from

7. An administrator or executor, for certain causes, may be removed by the county court, but that court has no power to set aside the or-

the grant made by the court, they have more power over him than they have over an executor, who, to a great extent, derives his powers from the will. The county courts may remove administrators for certain causes, and they have the power, by statute, to remove an executor who refuses to settle his accounts, and also where he fails or refuses, when required to do so, to give counter security; but they have no authority or jurisdiction, where probate of the will has been made and the executor has qualified, at a subsequent term to inquire into the propriety of the action of the court in granting letters testamentary to the executor. If, therefore, the executor had made a peremptory renunciation, which he was not in a condition to retract, even then, as that was a matter for the court of probate to have considered at the time he was permitted to qualify, the court could not, at a subsequent term, for that cause, vacate or annul its order by which letters testamentary had been granted to him.

The county court of Campbell, therefore, had no authority or jurisdiction at the September term, 1851, to revise its proceedings at a previous term, and the order and judgment of said court at its September term, 1851, were unauthorized and are erroneous.

Wherefore, said order and judgment are reversed, and cause remanded, with directions that the motion be dismissed.

*Morehead & Stevenson,* and *Robinson & Johnson,* for appellants; *Harlan, Harris,* and *Hodge,* for appellees.

---

TAYLOR, &c.
*vs.*
TIBBATTS, &c.

---

*der* of their qualification at a term subsequent to that at which it is made.